**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOHN G.,

                       Plaintiff,    1:21-cv-17256-NLH

v.                            **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

**APPEARANCES:**

TAYLOR VICK
TIMOTHY JOSEPH MELLO
JACOBS, SCHWALBE AND PETRUZZELLI, PC
10 MELROSE AVE
SUITE 340
CHERRY HILL, NJ 08003

     *On behalf of Plaintiff*

CATHERINE ELISABETH HAMILTON
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

     *On behalf of the Commissioner*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration.

Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, October 1, 2018.  In addition, Plaintiff raises a constitutional challenge to the authority of the ALJ.  For the reasons stated below, this Court will dismiss the constitution challenge and affirm the merits decision of the ALJ.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On April 22, 2019, Plaintiff filed an application for DIB, alleging that he became disabled on October 1, 2018.  (ECF 15 at 2).  Plaintiff claims that he cannot work because of his impairments of bipolar disorder, most episode mixed, psychotic feature, bipolar disorder I, insomnia unspecified, opiate abuse episodic, premature ventricular contraction, and irregular heart rhythm.[34]  (R. at 88-89; ECF 10 at 1).

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] On the alleged onset date, Plaintiff was 56 years old, which is defined as a "person of advanced age" (age 55 and over).  20 C.F.R. § 404.1563.

[4] In Plaintiff's brief he argues that he has also been diagnosed

Plaintiff's claim was denied initially and upon reconsideration.  (ECF 15 at 2).  Plaintiff requested a hearing before an ALJ, which was held on January 26, 2021.  (Id.)  On February 23, 2021, the ALJ issued an unfavorable decision. (Id.).  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on August 27, 2021, making the ALJ's decision final.  (Id.)  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by

---

with "coronary artery disease, status post myocardial infarction, stent placement and coronary artery bypass grafting surgery x2; mild asthma; and mild emphysema, thumb osteoarthritis tenosynovitis and trigger fingers of the left; bursitis of the bilateral elbows; bursitis of the right hip; iliotibial band syndrome of the right leg; right leg and hip pain; obstructive sleep apnea; status post C5-7 cervical fusion with hardware removal and repair at C7-T1, Meniere's disease, depression, anxiety, bipolar disorder, pathological gambling, and polysubstance abuse."  (ECF 10 at 4).  An ALJ has a duty to consider all medically determinable impairments in the record. See Robert E. v. Comm'r of Soc. Sec., No. 1:20-CV-06882-NLH, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021) (citing SSR 16-3p).  As explained below, it appears that the ALJ properly considered all of Plaintiff's medically determinable impairments.

3

"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);
Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.
Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,
970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means
more than "a mere scintilla."  Richardson v. Perales, 402 U.S.
389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305
U.S. 197, 229 (1938)).  It means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Id.  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  See Brown v. Bowen,
845 F.2d 1211, 1213 (3d Cir. 1988).

     A reviewing court has a duty to review the evidence in its
totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the
record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks
v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th
Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.
474, 488 (1951)).

     The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

4

Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.

However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for

6

determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2018, Plaintiff's alleged onset date. (R. at 17). At step two, the ALJ found that Plaintiff's impairments of coronary artery disease, status-post myocardial infarction, stent placement and coronary artery bypass grafting surgery x2; mild asthma; and mild emphysema were severe. (Id. at 18). In addition, the ALJ stated that he found Plaintiff's impairments of thumb osteoarthritis, tenosynovitis and trigger finger of left thumb, olecranon bursitis of the bilateral elbows, trochanteric bursitis of the right hip, iliotibial band syndrome of the right leg, pain in the right leg, obstructive sleep apnea, hyperlipidemia and hypertension, Vitamin D deficiency, a history of renal cyst/left nephrolithiasis, minimal osteopenia in the lumbar spine and minimal degenerative changes of the thoracic spine, H status-post C5-C7 cervical fusion all to be non-severe.

8

(Id.)  The ALJ also stated that Plaintiff had non-severe mental impairments of depression, anxiety, bipolar disorder, pathological gambling and polysubstance abuse.  (Id. at 19).  At step three, the ALJ determined that Plaintiff's impairments individually or in combination with one another did not equal the severity of one of the listed impairments.  (Id. at 20-22).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the light level,[5] with certain limitations.  (Id. at 22).  At steps four and five, the ALJ determined that Plaintiff could perform his past relevant work as a manager in the procurement services.  (Id. at 26).

Plaintiff cites to five assignments of error in his brief: (1) whether the ALJ erred in formulating Plaintiff's RFC; (2) whether the ALJ erred by failing to properly consider the evidence of record; (3) whether the ALJ failed to properly consider Plaintiff's statements on his conditions; and (4) whether the ALJ's finding that Plaintiff could engage in his past relevant work is supported by substantial evidence; and (5) whether the appointment of the Commissioner violates the separation of powers clause of the Constitution and makes the

---

[5] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

ALJ's decision constitutionally defective.  (See ECF 10 at 10-
33).  Separately and finally, Plaintiff argues that the evidence
of the record is such that the Court need not remand his case to
the SSA, but may award him benefits on its own.  (Id. at 34-35).
The Court takes each argument in turn.

> **i.  Whether the ALJ Erred in Formulating the RFC.**

In arguing that the ALJ erred in formulating the RFC,
Plaintiff contends that the analysis is deficient because it
does not account for "Plaintiff's severe and nonsevere
impairments, is not a function-by-function analysis, and is not
grounded in substantial evidence."  (Id. at 14-16).  Plaintiff
further argues that the ALJ did not account for Plaintiff's
mental impairments in the RFC and failed to follow the proper
Psychiatric Review Technique (the "PRT").  (Id. at 16-20).

The Court disagrees.  First, a review of the ALJ's analysis
reveals that the ALJ did thoroughly consider Plaintiff's severe
and non-severe impairments in formulating the RFC.  First, the
ALJ explicitly noted that he "considered all medically
determinable impairments both severe and nonsevere [in] finding
the residual functional capacity determined herein[.]"  (R. at
19).  The Court finds that representation to be borne out in the
RFC analysis with the ALJ's rather exhaustive discussion of the
examinations and treatment Plaintiff has received as well as his
discussion of how Plaintiff's impairments affected his daily

functioning.  (Id. at 22-26).  The ALJ specifically discussed Plaintiff's mental conditions, ability to breath, physical pain, particularly in his leg and ability to move his cervical spine. (Id.)  In order for the ALJ to conduct a proper RFC analysis, no magic set of words or order of analysis is required.  That is not what the law requires.  Hur, 94 F. App'x at 133 (stating that the ALJ is not required to recite every tidbit of evidence); Lorie H. v. Comm'r of Soc. Sec., No. 1:20-CV-13192-NLH, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022) ("[A]n ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis.").  The Court finds no error with the ALJ's thorough discussion of Plaintiff's severe and non-severe impairments.[6]

Plaintiff's argument that the ALJ failed to conduct a function-by-function analysis is similarly misplaced.  Plaintiff bases his argument on SSR 96-8p.  SSR 96-8p requires a narrative of how the evidence supports the ALJ's conclusion regarding the

---

[6] Plaintiff alludes in this argument to a contention that his cervical spine impairment should have been considered a severe impairment.  (ECF 10 at 15).  First, Plaintiff is conflating the step two determination with the RFC analysis.  In any case, at step two the ALJ discussed the impairment and stated that "no evidence of complaints or treatment during the period at issue[.]"  (R. at 19).  Second, the ALJ discussed the impairment again during the RFC analysis, making any error in not designating it as severe harmless.  (R. at 23); Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017).

RFC.  See SSR 96-8p.  At a high level, the RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ need not use particular language or adhere to a particular format in conducting her RFC analysis.  Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)).  SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC.  Indeed, SSR 96-8p contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually.

While a neat organization of the analysis around each function is preferable, failure by an ALJ to do so is not reversible error where the ALJ explains her RFC findings and those findings are supported by substantial evidence.  Malcolm v. Commissioner of Social Security, 2017 WL 5951703, at *19 n.14 (D.N.J. 2017) (noting "where, as here, the ALJ's RFC determination is supported by substantial evidence, and is 'accompanied by a clear and satisfactory explication of the basis on which it rests,' [Fargnoli, 247 F.3d at 41], the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96-8p") (citing Chiaradio v. Comm'r of Soc. Sec., 425 F. App'x 158, 161

(3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do.")); Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-by-function assessment outlined in SSR 96-8p, where the ALJ questioned the claimant about the physical limitations of her prior work, and substantial evidence supported the ALJ's findings); Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (Table), [published in full-text format at 2000 U.S. App. LEXIS 38785 at *5] (3d Cir. Dec. 19, 2000) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.")).

The Court also disagrees with Plaintiff's characterization of the ALJ's analysis of Plaintiff's limitations in the RFC analysis, particularly with the contention that the ALJ "cherry picked" the record to support an RFC that showed Plaintiff did not have many functional limitations. Again, an ALJ is not required to recite every tidbit of evidence in the record for his finding to be supported by substantial evidence. Hur, 94 F.

13

App'x at 133.  What Plaintiff terms "cherry picking" the Court perceives as a fairly exhaustive review of medical evidence and a discussion of how Plaintiff's daily activities square with that objective medical evidence.  (See R. at 24 ("As for the consistency of the claimant's allegations with the evidence of record, his daily activities are not limited to the extent one would expect given his allegations.")).

In support of this argument, Plaintiff cites to the ALJ's reliance on a statement from Plaintiff's medical provider that Plaintiff was getting jobs accomplished while failing to note that the same statement noted that Plaintiff had trouble concentrating on things.  (R. at 1508; ECF 10 at 6).  With this example, Plaintiff is asking this Court to weigh the evidence differently than the ALJ, which this Court is not permitted to do.  Williams, 970 F.2d at 1182.  In sum, Plaintiff does not point to anything that shows that the ALJ erred in conducting a function-by-function analysis.

The Court also holds that the ALJ properly considered Plaintiff's mental impairments when developing Plaintiff's RFC. Plaintiff's principal argument is that his mental impairments should have been deemed severe at step two.  Typically, when an ALJ finds that the claimant has at least one severe impairment at step two and continues on to the subsequent steps, omission of another impairment, or the determination that an impairment

14

is not severe, is harmless error.  Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless.")); Rutherford v. Barnhart, 399 F.3d 546, 552–53 (3d Cir. 2005).

The error at step two is only harmless, however, where the ALJ has considered the medically determinable impairment in the RFC determination and it would not otherwise affect the outcome of the case.  Id.  This is because the RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed to be severe at step two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the Court finds that the ALJ did not err at step two, as he explained that even though Plaintiff suffered from the medically determinable impairments of depression, anxiety,

bipolar disorder, pathological gambling and polysubstance abuse (R. at 19), those impairments did not meet the severity requirement of step two in that they did not independently "cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Id.); See 20 C.F.R. § 404.1522 (defining non severe impairments and basic work activities).  The ALJ properly addressed the "Paragraph B" criteria with regard to Plaintiff's anxiety and depression. (R. at 19-20).[7]  Thus, the ALJ properly found Plaintiff's mental impairments to be non-severe.

Further, even if that determination was in error it would be harmless because the ALJ appropriately incorporated Plaintiff's mental impairments into the RFC.  Indeed, the ALJ dedicated a paragraph to discussion of Plaintiff's mental impairments and how they affected his ability to function and specifically referenced his earlier discussion of Plaintiff's

---

[7] To properly consider Plaintiff's mental impairments at step two, an ALJ is required to undertake a "Paragraph B" assessment. See Marrollo v. Commissioner of Social Security, 2020 WL 3046317, at *5 (D.N.J. 2020) ("In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.").

mental impairments at step two.  (R. at 25 ("These opinions are persuasive as they are consistent with the claimant's limited and conservative course of treatment, his abstinence from gambling and substances, and the mental status examination findings discussed in detail above, as well as the claimant's reports of 'significant improvement' with changes in medication.")).

Relatedly, Plaintiff's argument that the ALJ did not follow the proper PRT technique is also meritless.  It is a restatement of his argument that the ALJ did not properly analyze his mental impairments.  The crux of Plaintiff's argument is that the ALJ failed to properly analyze the "four broad functional areas" used to evaluate mental impairments at step two.  (ECF 10 at 18-19); 20 C.F.R. § 404.1520a(c)(3).  The four areas, also known as the "Paragraph B" criteria, are the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).  Plaintiff argues that the ALJ's analysis of the four areas is conclusory and against the weight of the evidence.  (ECF 10 at 19-20).  The Court disagrees.

At step two, the ALJ stated that Plaintiff only had a mild limitation in each of the areas and followed up that conclusion with a page and half of discussion of the relevant medical

evidence on that topic.  (R. at 19-20).  As with his argument regarding the function-by-function analysis in the RFC, it appears that Plaintiff is really asking this Court to weigh the evidence surrounding Plaintiff's mental impairments differently than the ALJ.  Once again, this Court is not empowered to do that.  <u>Williams</u>, 970 F.2d at 1182.

### ii.   **Whether the ALJ Properly Weighed the Medical Evidence in the Record.**

Plaintiff's complaint here is that the ALJ failed to "properly consider the medical opinions of the Plaintiff's primary care physician, Dr. David Bechtel, consultative examiner, Dr. Juan Carlos Cornejo and a narrative report from Carolyn Cohen, LCSW."  (ECF 10 at 23).

With respect to Dr. Bechtel, Plaintiff argues that the ALJ should have heavily weighted the opinion of Dr. Bechtel because Dr. Bechtel has been not only "a treating and examining physician but has also been treating the Plaintiff for 30 years, so he has the longitudinal understanding of the Plaintiff's conditions[.]"  (<u>Id</u>. at 24).  First, Plaintiff appears to be relying on the "treating physician rule", which under previous law required the ALJ to give deference to the medical opinion of a claimant's treating physician.  <u>See</u> <u>Fargnoli</u>, 247 F.3d at 43.  However, the regulations were revised as of March 27, 2017 to eliminate the old "treating physician rule."  <u>See</u> 82 F.R. 5844.

Plaintiff filed his claim after the regulation was changed and thus the old regulation does not apply to his case.

The ALJ explicitly noted that Dr. Bechtel had a history of longitudinal treatment of Plaintiff but explained that Dr. Bechtel's conclusions were not consistent with Plaintiff's functioning and his course of treatment. (R. at 25). The ALJ further explained, "he does not establish an adequate basis for his opinion and there is a lack of reference to supportive diagnostic testing." (Id. at 26). The ALJ presented sound reasons for discounting Dr. Bechtel's reasoning and the Court will not second-guess it.

Next, Plaintiff contends that the ALJ improperly discounted Dr. Cornejo's opinion and that the ALJ had a duty to contact Dr. Cornejo for more information if he found the opinion insufficient. (ECF 10 at 24-25). The ALJ found Dr. Cornejo's opinion to be unpersuasive because "it is vague in part and not stated in vocationally relevant terms." (R. at 26). The ALJ was free to discount the opinion on that basis. See Kreitz v. Berryhill, No. 3:16-CV-02406, 2018 WL 4102861, at *5 (M.D. Pa. June 6, 2018), report and recommendation adopted, No. 3:16-CV-2406, 2018 WL 4095931 (M.D. Pa. Aug. 28, 2018) (finding no error with the ALJ's determination that the consultative examiner's opinion was unpersuasive when the ALJ provided a reason why).

Further, the ALJ was not required to contact Dr. Conejo to

19

clarify his opinion.  Plaintiff cites 20 C.F.R. § 404.1519p(b) to support this contention.  Title 20, C.F.R. § 404.1519p(b) says, "If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report[.]"

Key here is the meaning of "inadequate or incomplete." Multiple courts in the Third Circuit have explained a report by a consultative examiner is not "inadequate or incomplete" if it clearly outlines the medical examination but the ALJ disagrees with the consultative examiner's ultimate conclusion.  See Gladden o/b/o Hyman-Self v. Berryhill, No. CV 17-1832, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) ("'[T]he ALJ only need re-contact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled,' not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." Gladden o/b/o Hyman-Self v. Berryhill, No. CV 17-1832, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) (quoting Kelly v. Colvin, No. CV 09-759-RGA-SRF, 2013 WL 5273814, at *16 (D. Del. Sept. 18, 2013); Antony v. Saul, No. CV 19-410-CFC-SRF, 2020 WL 474867, at *14 (D. Del. Jan. 29, 2020), report and recommendation adopted, No. CV 19-410-CFC/SRF, 2020 WL 730327

(D. Del. Feb. 13, 2020) (same); <u>Kreitz v. Berryhill</u>, No. 3:16-CV-02406, 2018 WL 4102861, at *6 (M.D. Pa. June 6, 2018), <u>report and recommendation adopted,</u> No. 3:16-CV-2406, 2018 WL 4095931 (M.D. Pa. Aug. 28, 2018) (same).

Here, while the ALJ found Dr. Cornejo's ultimate conclusion to be unpersuasive, he "considered the underlying physical examination findings in assessing a residual functional capacity for light work with environmental limitations." (R. at 26). Thus, Dr. Cornejo's medical examination was not "inadequate or incomplete" such that the ALJ was required to contact the doctor for clarification.

Plaintiff states that "the ALJ failed to properly consider the narrative report from Carolyn Cohen, LCSW." (ECF 10 at 25). The only evidence in the record from Ms. Cohen is a one-page letter to Plaintiff's attorney noting Plaintiff's prior diagnosis, referencing some medical history, and mentioning that Plaintiff was supposed to see a therapist who specialized in cognitive behavioral therapy. (R. at 1917). Critically, this is not a medical opinion within the meaning of regulations. "A medical opinion is a statement from a medical source about what you can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in [certain] abilities[.]" 20 C.F.R. § 404.1513(a)(2). Ms. Cohen makes no statements about what

Plaintiff can or cannot do despite his impairments.  Further, even if she did, a licensed clinical social worker is not an acceptable medical source under the regulations.  Martin v. Berryhill, No. CV 16-2630, 2018 WL 1079613, at *10 n.10 (E.D. Pa. Jan. 26, 2018), report and recommendation adopted, No. CV 16-2630, 2018 WL 1071880 (E.D. Pa. Feb. 27, 2018) ("A psychotherapist with the LCSW credential does not qualify under the Regulations as an "acceptable medical source" for purposes of rendering a "medical opinion" regarding the existence of an impairment."); 20 C.F.R. § 416.902(a)(2) (defining a licensed psychologist as an acceptable medical source but not a licensed clinical social worker).  The Court finds no error in the ALJ's omission of Ms. Cohen's letter from his analysis.

### iii. Whether the ALJ Properly Considered Plaintiff's Statements.

Plaintiff argues that the ALJ improperly discounted his subjective statements regarding the symptoms of his conditions and failed to consider Plaintiff's long work history in assessing his credibility and in doing so failed to follow SSR 16-3p.  (ECF 10 at 27-29).  While an ALJ must explain why he discounted subjective accounts of pain or functional limitations, such accounts must be supported by objective medical records.  Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999) (explaining that allegations of

22

pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony); SSR 16-3p ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record ... Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence....").

Plaintiff's argument here is again just a request for this Court to weigh the evidence differently than the ALJ did.  In his brief, Plaintiff lists multiple statements that he made during the hearing related to the gravity of his conditions which he contends should have prompted the ALJ to issue a finding of disability.  (ECF 10 at 28).  In his Opinion, the ALJ specifically mentioned the limitations that Plaintiff outlined in his testimony but weighed them against other evidence in the record.  (R. at 24).  For instance, he discounted Plaintiff's

statement that he needed assistance with household chores
because there was evidence in the record, for instance, that
Plaintiff was able to paint a two-story house in April 2019.
(Id.)

With respect to Plaintiff's argument that the ALJ did not
incorporate Plaintiff's long work history into a credibility
determination, Plaintiff bases that argument on 20 C.F.R. §
404.1529(c)(3) and SSR 16-3p.  20 C.F.R. § 404.1529(c)(3)
states, in relevant part, that the SSA "will consider all of the
evidence presented, including information about [the claimant's]
prior work record[.]"  SSR 16-3p states, "Medical sources may
offer diagnoses, prognoses, and opinions as well as statements
and medical reports about an individual's history, treatment,
responses to treatment, prior work record, efforts to work,
daily activities, and other information concerning the
intensity, persistence, and limiting effects of an individual's
symptoms.").

Nowhere in these two authorities cited by Plaintiff does it
prescribe a manner in which an ALJ must communicate his
consideration of a claimant's prior work history in an opinion.
Further, multiple times in his Opinion, the ALJ alluded to
Plaintiffs prior work in his discussion of Plaintiff's attempts
to work after 2018, Plaintiff's depression from being forced to
retire, and the fact that Plaintiff never had issues with

24

authority that resulted in his losing a job.  (R. at 18-19).
The ALJ is not required to exhaustively mention every piece of
evidence in the record and the Court is satisfied that the ALJ
holistically considered the record with respect to Plaintiff's
prior work history.  Hur, 94 F. App'x at 133 (stating that the
ALJ is not required to recite every tidbit of evidence); Lorie
H., , 2022 WL 2803168 at *6 ("[A]n ALJ does not need to use
particular language or adhere to a particular format in
conducting her RFC analysis.").

   iv.  **Whether the ALJ Improperly Found that Plaintiff Could
        Perform His Past Relevant Work.**

   Plaintiff argues that in determining that Plaintiff could
return to his past relevant work as a manager in procurement
services, the ALJ failed to make specific findings or analysis
regarding the physical and mental demands of the work as
required by SSR 82-62.  (ECF 10 at 29).  SSR 82-62 states that a
determination of the ability to perform past relevant work
should contain findings of fact as to a claimant's RFC, the
physical and mental demands of the past job, and that the
claimant's RFC would allow them to return to a past job or
occupation.  SSR 82-62.  The Court agrees with Plaintiff that
the ALJ should have been more explicit in the Opinion regarding
the specific mental and physical demands of Plaintiff's prior
work.  However, the ALJ made clear that he was relying on the

vocational expert's (the "VE") testimony in coming to his conclusion, (R. at 26-27, and the VE discussed the physical and mental demands of Plaintiff's former job in assigning it a classification under the Dictionary of Occupational Titles (R. at 80).  The VE also replied to hypotheticals related to Plaintiff's past relevant work and his ability to do the job as he did it and as it is generally done.  (Id. at 81-82).  The ALJ determined that the VE's testimony was uncontroverted, (id. at 27), and the Court's own review of the record reveals no reason to second guess that conclusion.[8]  Therefore, the ALJ's failure to specifically outline the demands of Plaintiff's prior work in the Opinion is harmless error and remand would be a waste of resources.  Rutherford, 399 F.3d at 553 ("[A] remand is not required here because it would not affect the outcome of the case.").[9]

---

[8] Plaintiff argues that the VE's testimony that any condition that required an individual to be off task more than 10% of the day would be work preclusive was contradicted by Dr. Cornejo's statement that Plaintiff would only be able to do sedentary activity with needed breaks.  (ECF 10 at 31).  First, Dr. Cornejo never opined on what percent of time Plaintiff would be off task.  (R. at 70).  In addition, the ALJ explained that he found that part of Dr. Cornejo's report to be unpersuasive because it was vague and not stated in vocationally relevant terms. (Id. at 26).

[9] Plaintiff's arguments that he cannot perform his past work because the record shows that he cannot focus or handle stress (ECF 29-30) fail for the same reasons his arguments about the ALJ's consideration of his mental impairments fail.  The ALJ adequately considered how those impairments would affect his

> **v.   Whether the Appointment of the Commissioner Was Unconstitutional Such that the Decision by the SSA in this Case Was Constitutionally Defective.**

The Plaintiff alleges that the Social Security proceedings in their entirety were constitutionally defective because of the appointment of Andrew Saul as Commissioner of the Social Security Administration.  (ECF 10 at 31).  The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 15 at 36).  Plaintiff argues that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional authority to render a decision on Plaintiff's case.  (ECF 10 at 32).

While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will.  Collins v. Yellen, 141 S. Ct. 1761, 1787-88, 1788 n.23 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the

---

ability to work.

27

functions of his office.").

> The Appointment Clause cases do not help the shareholders either.  These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer. . . . Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed."  There is thus no barrier to them exercising power in the first instance.

Id. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing.  Id. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar.  See id. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged.").  So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal

28

restriction is unlawful in the abstract." Id. at 1789 (Thomas, J. concurring).  Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." Id. at 1802 (Kagan, J. concurring).  See also Mor v. Kijakazi, No. 21-1730, 2022 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review.  Without standing, there is no "case or controversy" to be decided.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits.  (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act.  Kwasnik v. Kijakazi, No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); see also Matthews v. Apfel, 239 F.3d

589, 594 (3d Cir. 2001).  Thus, this Court does not have the
authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal
connection between the harm of the ALJ's decision and the
impermissible removal provision.  As discussed above, and as
found by other courts, the mere "taint" of the head of an agency
does not establish a sufficient nexus for standing.  See Kwasnik
v. Kijakazi, No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at *33-
34 (D.N.J. Jun. 30, 2022) (citing Andino v. Kijakazi, No. 21-
2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022)
("Justice Alito specified in Collins that Seila Law's holding on
standing 'does not mean that actions taken by such an officer
are void ab initio and must be undone.' . . . [I]t is not
difficult to see that Collins requires Andino to demonstrate a
nexus between the decision denying her disability benefits and
42 U.S.C. § 902(a)(3)."); Mor v. Kijakazi, No. 21-1730, 2022 WL
73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to
any connection between the Commissioner's removal under Section
902(a)(3) and the ALJ's decision (or any other action in this
case).  As a result, the requisite nexus is not met, and the
Court denies Plaintiff's appeal on this ground."); see also Ford
v. Kijakazi, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr.
22, 2022) (denying separation of powers claim because plaintiff

failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in Collins, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." Collins, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. Id. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has
> undermined and politicized Social Security
> disability benefits, terminated the agency's
> telework policy that was utilized by up to 25
> percent of the agency's workforce, not repaired the
> SSA's relationships with relevant Federal employee
> unions including in the context of COVID-19

31

> workplace safety planning, reduced due process
> protections for benefits appeals hearings, and
> taken other actions that run contrary to the
> mission of the agency and the President's policy
> agenda.

Id.[10]

First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" Collins, 141 S. Ct. at 1779 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)); see also Kwasnik v. Kijakazi, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

---

[10] The Court notes that this quote came from a Washington Post article dated July 11, 2021. The quote itself, credited to the White House, was not dated within the article. See Lisa Rein, Biden fires head of Social Security Administration, a Trump holdover who drew the ire of Democrats, WASHINGTON POST, July 11, 2021 at https://www.washingtonpost.com/politics/andrew-saul-social-security-/2021/07/09/c18a34fa-df99-11eb-a501-0e69b5d012e5_story.html.

Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record. See Johnson v. Kijakazi, No. 21-2372, 2022 U.S. Dist. LEXIS 114766, at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted).

The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.[11]

**III. Conclusion**

For the reasons expressed above, the Court will affirm the decision of the ALJ.

An accompanying Order will be issued.

Date:  August 25, 2022                    s/  Noel L.  Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[11] Because the Court finds no error warranting remand in the ALJ's decision, the Court rejects Plaintiff's argument that the Court should summarily grant him benefits. (ECF 10 at 34-35).